UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

ALEISHIA MCGINNIS,

Plaintiff(s),

v.

TRANS UNION LLC, et al.,

Defendant(s).

Case No.2:25-CV-1279  JCM (NJK)

ORDER

Presently before the court is defendant Edfinancial Services, LLC's motion to dismiss. (ECF No. 25).  Plaintiff Aleishia McGinnis filed a response (ECF No. 28), to which Edfinancial replied (ECF No. 38).

## I.      Background

On July 11, 2023, McGinnis filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the District of Nevada.  (ECF No. 1 ¶ 17).  Her confirmation hearing was held on December 14, 2023, (ECF No. 25, Ex. D), and her Chapter 13 plan was confirmed on January 10, 2024.  (ECF No. 1 ¶ 19).  McGinnis alleges that she has made payments as required under the terms of the plan and is still in active bankruptcy.  (*Id.* ¶¶ 21, 25).

Edfinancial is McGinnis' student loan servicer.  (ECF No. 25 at 4).  It is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency ("CRA"). (ECF No. 1 ¶ 14).

McGinnis alleges that Edfinancial did not file paperwork to declare any debts owed as "non-dischargeable" pursuant to 11 USC § 523 *et seq.*, and did not obtain relief from the automatic stay that went into effect upon confirmation of the plan to pursue McGinnis for personal liability. (*Id.* ¶¶ 22, 23).

According to McGinnis, Edfinancial "inaccurately reported an increasing high balance history and a balance of $12,536 on account No. 2224." (*Id.* ¶ 36). She contends that this reporting was "inaccurate, misleading, and derogatory" because she is "in active bankruptcy and the automatic stay order is still in place." (*Id.*).

McGinnis filed this lawsuit against Edfinancial and various CRAs, alleging violations of the Fair Credit Reporting Act ("FCRA"). Edfinancial responded with the present motion to dismiss on the grounds that McGinnis failed to state a claim upon which relief can be granted.

## II.    Legal Standard

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

- 2 -

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss.  First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79.  Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice.  *Id.* at 678.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief.  *Id.* at 679.  A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.  *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted).  When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed.  *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  The *Starr* court stated, in relevant part:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

If the court grants a Rule 12(b)(6) motion to dismiss, it should grant leave to amend unless the deficiencies cannot be cured by amendment.  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  Under Rule 15(a), the court should "freely" give leave to amend "when

justice so requires," and absent "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments . . . undue prejudice to the opposing party . . . futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The court should grant leave to amend "even if no request to amend the pleading was made." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted).

**III.    Materials that the Court May Consider**

In ruling on a motion to dismiss, a district court generally "may not consider any material beyond the pleadings." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). If the district court relies on materials outside the pleadings in making its ruling, it must treat the motion to dismiss as one for summary judgment and give the non-moving party an opportunity to respond. Fed. R. Civ. P. 12(b); *see United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).

"A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Ritchie*, 342 F.3d at 908. A document "may be incorporated by reference into the complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.*

Edfinancial requests that the court consider McGinnis' federal student loan documents, her Chapter 13 bankruptcy plan, and the Consumer Data Industry Association ("CDIA") guidelines. McGinnis does not contest any of these requests. *See* Local Rule LCR 47-3.

McGinnis bases her claims on the allegedly inaccurate reporting of an "increasing[ly] high balance history and a balance of $12,536 on account No. 2224." (ECF No. 1 ¶ 36). Edfinancial clarifies, and McGinnis does not dispute, that the balance pertains to an educational loan disbursed

in January and April 2024.  (ECF No. 25 at 4).

McGinnis' claims are based on the allegedly inaccurate reporting of a federal student loan serviced by Edfinancial.  The court will consider relevant loan documents, including the Master Promissory Note between McGinnis and the Department of Education and the statement disclosing the loan amounts to be disbursed to McGinnis in 2024.  (ECF No. 25, Exs. A, B).

McGinnis also extensively refers to the Chapter 13 bankruptcy plan and the CDIA guidelines in the complaint.  (*See* ECF No. 1 ¶¶ 17–35).  The court will consider these documents as well.  (ECF No. 25, Exs. C, D).

**IV.     Discussion**

A.     Accuracy of the Credit Report

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) (citing 84 Stat. 1128, 15 U.S.C. § 1681).  "To this end, FCRA requires CRAs to follow procedures in reporting consumer credit information that both 'meet[] the needs of commerce' and are 'fair and equitable to the consumer.'"  *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 147 (4th Cir. 2008) (quoting 15 U.S.C.A. § 1681(b)).

Section 1681s-2(a) prohibits any person from furnishing information to a CRA that the person knows is inaccurate.  Additionally, any person who "regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies" must correct and update the information provided so that it is "complete and accurate."  § 1681s-2(a)(2).  This means that furnishers of information must determine whether the information that they have reported to CRAs is "incomplete or inaccurate."  § 1681s-2(b)(1)(D).

. . .

The Ninth Circuit has joined other circuits in holding that a report is inaccurate or incomplete within the meaning of the FCRA when it is "patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *E.g.*, *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) (quoting *Sepulvado v. CSC Credit Servs., Inc*. 158 F.3d 890, 895 (5th Cir. 1998)); *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 147 (4th Cir. 2008).

However, Ninth Circuit district courts have found it permissible and not misleading to report debts during the pendency of the bankruptcy. California district courts have held that "the FCRA does not prohibit the accurate reporting of debts that were delinquent during the pendency of a bankruptcy action[.]" *E.g.*, *Adkins v. Experian Info. Sols., Inc.*, No. 5:16-CV-02150-EJD, 2016 WL 6841700, at \*2 (N.D. Cal. Oct. 7, 2016); *Blakeney v. Experian Info. Sols., Inc.*, No. 15-cv-5544-LHK, 2016 WL 4270244, at \*6 (N.D. Cal. Aug. 15, 2016); *see also Nissou-Rabban v. Capital One Bank (USA), N.A.*, No. 15-cv-1675-JLS (DHB), 2016 WL 4508241, at \*3 (S.D. Cal. June 6, 2016); *Mortimer v. JP Morgan Chase Bank, N.A.*, No. C 12-1936 CW 2012 U.S. Dist. LEXIS 108576, at \*9 (N.D. Cal. Aug. 2, 2012) (explaining that neither the bankruptcy code nor the FCRA bars reporting of late payments while a bankruptcy petition is pending). "That is because the higher amount is not discharged until the debtor has made the payments required under the plan." *Blakeney*, 2016 WL 4270244, at \*6 (citing *Cristobal v. Equifax, Inc.*, No. 16-cv-06329-JST, 2017 WL 1489274, at \*3 (N.D. Cal. Apr. 26, 2017)).

Courts in this district have likewise found that "bankruptcy does not prevent the reporting of debt."[1] *Abeyta v. Bank of Am.*, No. 215-cv-02320-RCJ-NJK, 2016 WL 1298109, at \*2 (D. Nev.

---

[1] The court acknowledges that these cases contemplate pre-petition debts. However, this further supports Edfinancial's position that its reporting was accurate and not misleading. The cases are relevant because they show that even when a debt is governed by a bankruptcy plan, furnishers may continue to report debts. The same would apply to debts not governed by the bankruptcy plan.

Mar. 31, 2016); *Uehara v. TD Bank., National Ass'n*, No. 2:17-cv-00190-GMN-CWH, 2018 WL 1472712, at *3 (D. Nev. Mar. 26, 2018); *Polvorosa v. Allied Collection Serv., Inc.*, No. 2:16-cv-1508 JCM (CWH), 2017 WL 29331, at *3 (D. Nev. Jan. 3, 2017) ("reporting delinquencies during the pendency of a bankruptcy during a bankruptcy's automatic stay is not itself a violation of the FCRA").

As evidenced from the 2024 disclosure statement, and undisputed by the parties, McGinnis' loan was disbursed after the confirmation of the Chapter 13 bankruptcy plan. (ECF No. 28 at 3); (ECF No. 25, Ex. B). The parties dispute whether the account was "included" in McGinnis' bankruptcy, (ECF No. 28 at 3); (ECF No. 25 at 6), but even if it was, the outcome would be the same. That is, under this district's case law, it is not materially misleading for Edfinancial to report the status of McGinnis's post-petition loan during the pendency of her bankruptcy. *See Abeyta*, 2016 WL 1298109, at *2; *Uehara*, 2018 WL 1472712, at *3; *Polvorosa*, 2017 WL 29331, at *3.

As to McGinnis' concerns about the automatic stay order, the stay affects only a creditor's ability to collect on a debt. *See Keller v. New Penn Fin., LLC (In re Keller)*, 568 B.R. 118, 122 (B.A.P. 9th Cir. 2017) ("Section 362(a)(6) stays 'any act to collect, assess, or recover a claim against the debtor that arose *before*' the filing of the petition.") (quoting 11 U.S.C. § 362). Even if the stay applies to Edfinancial, McGinnis' concern is with the reporting of the debt, not the attempted collection thereof.

B.    Metro 2 Reporting Standards as a Theory of Liability

McGinnis also argues that Edfinancial failed to comply with the CDIA's Metro 2 reporting format, which "provide[s] guidance for credit reporting and FCRA compliance," and that failing to follow this standard is sufficiently misleading to support her FCRA claim. (ECF No. 1 ¶¶ 27–

34).  This argument is unavailing.

Courts in the district of Nevada have determined "that the industry guidelines—such as Metro 2—do not establish the standards for accuracy under the FCRA." *Florence v. Cenlar Fed. Savings & Loan*, No. 2:16-CV-0587-GMN-NJK, 2018 WL 1145804, at *7 (D. Nev. Mar. 1, 2018), aff'd sub nom. *Florence v. Experian Info. Sols., Inc.*, 775 F. App'x 308 (9th Cir. 2019); *Uehara v .TD Bank, National Ass'n*, No. 2:17-cv-00190-GMN-CWH, 2018 WL 1472712, at *5 (D. Nev. Mar. 26, 2018).  The court sees no reason to depart from the trend of this district.

Moreover, aside from claiming that Edfinancial "reported an increasing[ly] high balance," McGinnis does not explain what steps Edfinancial should have taken to comply with the Metro 2 format.  Implicitly, McGinnis' argument is that the appropriate Metro 2 format would be to *not* report the amount due on the loan, but the guidelines do not direct furnishers to suppress or zero out balances for accounts not included in or discharged by bankruptcy.  Indeed, the Metro 2 format guidelines even recommend that furnishers update tradelines for accounts *included in* bankruptcy during the months between petition and final resolution.  (ECF No. 25, Ex. A at 6-35).  Nothing in the Metro 2 format guidelines appears to prohibit Edfinancial from reporting the status of a post-confirmation loan.

Accordingly, McGinnis' Metro 2 theory of liability fails.

C.      Reasonable Investigation

McGinnis also asserts that Edfinancial failed to reasonably investigate her dispute and continued to report the inaccurate information afterward, thereby causing her harm.  (ECF No. 1 ¶¶ 46–47, 51); (ECF No. 28 at 6).  However, making out a case under 15 U.S.C. § 1681s-2(b)(1) requires that the investigation "find[] that the information is incomplete or inaccurate."  As discussed above, McGinnis has failed to sufficiently plead that the reporting of the post-petition

post-confirmation was inaccurate, incomplete, or materially misleading. *See supra* Section A. Accordingly, McGinnis has failed to make out a claim under § 1681s-2(b)(1).

> D.     15 U.S.C. § 1681i

To the extent that McGinnis intends to pursue a violation of 15 U.S.C. § 1681i by defendant Edfinancial, that claim is dismissed. Section 1681i applies only to the conduct of a "consumer reporting agency," which McGinnis does not allege Edfinancial to be. *See* 15 U.S.C. § 1681i(a) (requiring that a "consumer reporting agency…conduct a reasonable reinvestigation" where a consumer disputes the accuracy of a consumer credit report).

> E.     Leave to Amend

The court declines to grant McGinnis leave to amend, as the deficiencies in her complaint are legal and cannot be remedied by additional pleading of fact. For example, even assuming that the loan was taken out pre-petition (which evidence indicates that it was not), case law would still consider Edfinancial's reporting of the loan during the bankruptcy to be "not misleading." *See Abeyta*, 2016 WL 1298109, at \*2; *Uehara*, 2018 WL 1472712, at \*3; *Polvorosa*, 2017 WL 29331, at \*3.

## V.     Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant Edfinancial's motion to dismiss (ECF No. 25) be, and the same hereby is, GRANTED. The case is dismissed with prejudice and the clerk of court is instructed to close the case.

DATED February 2, 2026.

_____
UNITED STATES DISTRICT JUDGE